UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NITZA LOPEZ-LOPEZ,
    Plaintiff,

v.                              CIVIL ACTION NO. 14-10063-MPK[1]

CAROLYN COLVIN, ACTING
COMMISSIONER OF THE
SOCIAL SECURITY
ADMINISTRATION,
    Defendant.

MEMORANDUM AND ORDER ON
MOTION FOR RECONSIDERATION UNDER RULE 59(e) (#29).

KELLEY, U.S.M.J.

On September 29, 2015, the Court issued a Memorandum and Order (#26) allowing Plaintiff Nitza Lopez-Lopez's Motion for Order Reversing Decision of the Commissioner, denying Defendant's Motion to Affirm the Commissioner's Decision and remanding the case to the Social Security Administration ("SSA"). Defendant Carolyn Colvin, Acting Commissioner of the SSA, has now moved for partial

---

[1] With the parties' consent, this case was reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636( c). (##20-23.)

reconsideration of the Court's Order pursuant to Rule 59(e), Fed. R. Civ. P.[2] (#29.)

Familiarity with the Court's Memorandum and Order (#26) is presumed.  In arguing that "the Court appears to have conflated the requirement that the ALJ <u>consider</u> GAF scores with a strict requirement that the ALJ <u>discuss</u> every score" (#29 at 3, emphasis in original), the Commissioner misconstrues the Court's decision.  The Court did not require or suggest that an ALJ must comment on each GAF score separately.  Rather, the point was that although the ALJ noted the high and low GAF scores,[3] no mention was made of the twenty or more GAF scores of 50[4] or below assigned to Plaintiff by her treating doctors or therapists over the course of about a year and a half during her period of alleged disability.  It was the ALJ's failure to consider the significance or import of seventeen months of identical GAF scores suggestive of serious symptoms that was found to be error.[5]

---

[2] The Commissioner is not challenging the Court's decision that this case must be remanded for further consideration of the effect of Plaintiff's psychiatric hospitalizations and related absences on her RFC during the relevant period. (#29 at 1-2.)

[3] The high score of 60 was assigned in 2009, well before her disability onset date in 2011.

[4] A GAF score of 41-50 is indicative of "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR moderate difficulties in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Institute, Diagnostic & Statistical Manual of Mental Disorders (4th ed. 1994).

[5] Contrary to the Commissioner's contention, the Court did not adopt "a <u>per se</u> rule that the ALJ's failure to give specific reasons for rejecting every GAF score constitutes reversible error." (#29 at 5.)

That having been said, the Commissioner's point that AM-13066 "requires clinicians to provide both support and context for their GAF ratings" (#29 at 6) is well taken:

> The memorandum [Administrative Memorandum AM–13066] explains:
>
>> By itself, the GAF cannot be used to 'raise' or 'lower' someone's level of function. The GAF is only a snapshot opinion about the level of functioning. It is one opinion that we consider with all the evidence about a person's functioning. Unless the clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis.
>
> *Lane v. Colvin*, No. C13–5658–MJP, 2014 WL 1912065, *9 (W.D. May 12, 2014) (quoting AM–13066).

*Bourinot v. Colvin*, 95 F. Supp.3d 161, 178 (D. Mass. 2015).  In instances when Plaintiff did not go to her medical appointments, but yet was given a GAF score, it would be impossible to offer an explanation supporting the rating.  Similarly, when the GAF scores remained constant, yet Plaintiff's symptoms fluctuated, clinicians did not "clearly explain[] the reasons" why the ratings remained the same.  In large measure the doctors and therapists failed explicitly to support or explain the GAF scores they assigned to Plaintiff.  As a consequence, under AM–13066, those ratings would not "provide a reliable longitudinal picture of the claimant's mental functioning."  Taking these circumstances into account, the ALJ could have

considered the GAF scores for whatever value they had, but relied on the actual text of the doctors' reports and progress notes in undertaking his disability analysis.

For the reasons stated, it is ORDERED that the Motion for Reconsideration be, and the same hereby is, ALLOWED to the extent that, on remand, the ALJ need not contact Lopez's treating sources for explanations with respect to her GAF scores, and otherwise DENIED.

November 19, 2015

/s/ M. Page Kelley
M. Page Kelley
United States Magistrate Judge